Brown *v.* Carpenter.

---

DAVID A. BROWN and GEORGE H. BROWN

*v.*

WILLIAM V. CARPENTER.

[Filed November 1st, 1898.]

G. mortgaged his lands to C., "to [in the language of the bill] secure and preserve the said property (to the amount of said mortgage) from any losses which said G. might thereafter incur," and thereafter conveyed them to B. C. refuses to cancel the mortgage, and B. seeks to have the mortgage canceled by the decree of this court.—*Held*, that if the language of the bill means that the purpose of making the mortgage was to defraud the creditors of G., B. taking conveyance from him and succeeding to his rights only, will not be aided by the decree of this court, and if such be not the meaning of the language of the bill, that the language is uncertain, vague and indeterminate in its statement of a material fact upon which the right to relief depends, and that in either case the bill is bad upon demurrer.

---

On demurrer to bill.

*Mr. Benjamin A. Vail*, for the complainants.

*Mr. Alan H. Strong*, for the demurrant.

THE CHANCELLOR.

The bill states this case: That on the 9th day of November, 1897, the complainants purchased from Charles H. Gardner and Mary, his wife, certain lands in Woodbridge township, Middlesex county, subject to a mortgage of $800 held by the Perth Amboy Savings Bank, which lands were on that day conveyed by Gardner and wife to them by deed with covenant of warranty, subject to the $800 mortgage; that before then, in 1894, Gardner and wife had executed and delivered to William V. Carpenter a mortgage for $3,500 upon the same lands, conditioned for the payment of the $3,500 on the 19th of December, 1899, with interest at six per cent. per annum, payable semi-annually, and that mortgage was recorded before the conveyance of 1897

Brown v. Carpenter.

to the complainants; that the mortgage was given to Carpenter to secure him against any obligations he might thereafter incur or become liable for in behalf of Gardner, for any money Carpenter might from time to time advance to Gardner at his request, " and," in the language of the bill, " to secure and preserve the said property," to the amount of said mortgage, " from any losses which the said Gardner might thereafter incur;" that no obligations were ever incurred by Carpenter for Gardner, and no money was ever paid or advanced by Carpenter upon the mortgage; that the mortgage was not intended as a gift, and that no consideration ever passed from Carpenter to Gardner therefor; that the complainants had no actual knowledge of the mortgage at the time of the conveyance of the lands to them, and that Carpenter will not surrender the mortgage to be canceled. The prayer is that he be compelled to do so.

It is objected by the demurrer, in the first place, that Gardner and his wife should be parties to the suit, and in the second place, that the allegation that the mortgage was given to Carpenter to " secure and preserve the said property (to the amount of said mortgage) from any losses which the said Gardner might thereafter incur," imports that the mortgage was intended between the parties to it as a fraudulent cover or shield of the property mortgaged against the claims of prospective creditors of Gardner to its amount, and being so intended by both mortgagors and mortgagee, will not be relieved against in equity at the instance of Gardner or at the instance of those who may hold under him.

It is not perceived that Gardner and his wife are necessary parties in the suit. They have parted with all interest in the property. It does not appear that any personal obligation attends the mortgage, and it is not suggested that a decree of any kind can be made against them or either of them.

The principal insistence has been upon the second ground of demurrer. The mortgage was not a gift by Gardner and wife to Carpenter. No consideration was paid for it. It was executed and delivered to answer three purposes—*first*, to secure Carpenter against obligations to be assumed for Gardner; *second*, to

Brown *v.* Carpenter.

secure Carpenter for money to be advanced for Gardner, and *third*, to secure and preserve the property covered by the mortgage to the value of $3,500 from losses that Gardner might thereafter incur. The first inquiry is as to the meaning of the language in which the purpose (*third*) is expressed in the bill. The demurrant claims that its meaning is that the mortgage was designed by the mortgagors and mortgagee to be a protection for Gardner against his creditors, upon the argument that it anticipates losses by Gardner which can come over on the mortgaged land so as to take it, and is designed to defeat the collection of such losses to the extent of the amount of the mortgage, or, in plainer language, it means that the mortgage was a contrivance to defeat the recovery of claims of future creditors. If this be not the proper construction of the language, I am at loss to give it other meaning. The complainants' counsel has not been able to suggest another meaning. If it has other meaning it is at least too vague and indeterminate to manifest that meaning, which must be understood before relief can be given, and the bill is demurrable to upon the ground that it is uncertain and vague in this respect. But if the construction of the language is as the defendant contends, what is the situation? Grantees of a mortgagor with fraudulent intent, who have purchased the land without actual knowledge of the mortgage, for a consideration not stated, ask that the mortgage be canceled. A court of equity would not afford to the mortgagors the relief they ask, because of the principle which underlies the maxim *in pari delicto, potior est conditio possidentis* (*Schenck* v. *Hart, 5 Stew. Eq. 774, 782*), and I do not think that they stand in better position. *Pillsbury* v. *Kingon, 6 Stew. Eq. 287, 291; Bump Fraud. Conv. (3d ed.) 446.* As grantees of Gardner they are his representatives and succeed only to his rights.

The demurrer will be sustained, with costs.